[No. 17097. Department One. October 21, 1922.]

VAHAN BOYD et al., *Appellants*, v. JAMES E. HUTTON *et al., as Empire Mortgage Loan Company, Respondents*, JULIA B. HOITT *et al., Interveners,* FRANK JORDAN *et al., Defendants.*[1]

RECEIVERS (9)—GROUNDS—INSOLVENCY OR MISCONDUCT OF PARTY. A receiver is properly appointed in an action against insolvents, where considerable of their property was in the hands of plaintiffs who were seeking to foreclose a lien upon it under contracts tainted with usury.

USURY (17)—EVIDENCE—SUFFICIENCY. The interest called for on the face of notes is not controlling on the question of usury.

SAME (17). Upon an issue as to usury, it cannot be claimed on appeal that the plaintiffs were pawnbrokers and entitled to charge interest at three per cent per month, under Rem. Comp. Stat., § 2486, where the claim was not suggested in the pleadings or at the trial, and there was no showing that, upon receiving pledges, plaintiffs, who were engaged in conducting a drug store, kept records or made reports to the police, as required by the laws governing pawnbrokers.

SAME (21)—AMOUNT OF PENALTIES. Rem. Comp. Stat., § 7304, providing for an offset against a judgment on a usurious contract, for the amount of all accrued and unpaid interest, refers to interest

[1]Reported in 210 Pac. 33.

accrued at the time the judgment is entered, and not to the time of demand or commencement of the action.

APPEAL (426)—REVIEW—HARMLESS ERROR—NOT AFFECTING RESULT. Plaintiff cannot assign error in allowing an intervention, where on the merits, they were not entitled to recover in any event.

USURY (17)—EVIDENCE—SUFFICIENCY. A note for $7,400 and interest at twelve per cent per annum, given to a retiring partner on dissolution of the firm, and immediately assigned by him to his mother, who had through him actually advanced the sum to the partnership, is not usurious where it is not shown that it was ever agreed that more than twelve per cent interest should be paid.

PARTNERSHIP (70)—RETIREMENT AND ADMISSION OF PARTNERS—ASSUMPTION OF DEBT. A note given to a retiring partner by the surviving partner, who took in a new partner on the same day, is the obligation of the new partnership, where it appears that it received the assets and good will of the old business for which the note was given and afterwards made payments on the note.

USURY (12, 17)—IN TRANSACTIONS THROUGH AGENTS—EVIDENCE—SUFFICIENCY. An agreement made with the lender's agent, for advances to be made to pawnbrokers, is usurious, where, in addition to interest at twelve per cent per annum, it provided for a bonus from the proceeds of unredeemed pledges of twelve per cent per annum on the total advances, and for an equal division of all such proceeds above the bonus, under Rem. Comp. Stat., § 7304, providing that, where the same person acts as agent for the borrower and lender, he shall be deemed the agent of the lender.

Cross-appeals from a judgment of the superior court for King county, Griffiths, J., entered August 1, 1921, upon findings in favor of certain interveners and dismissing plaintiffs' case, in an action on promissory notes and to foreclose pledges, tried to the court. Affirmed.

*Peterson & MacBride,* for appellants.

*Griffin & Griffin,* for interveners J. P. Smith and Matilda Ryan.

*Moore & Harroun,* for intervener H. R. Fischnaller.

*Ryan & Desmond,* for intervener Julia B. Hoitt.

*Fred H. Lysons* and *L. B. Schwellenbach,* for respondents.

MITCHELL, J.—On and after February 1, 1916, James E. Hutton and Jeannette Hutton engaged in the pawnbroker's business, under the trade-name of Empire Mortgage Loan Company, in Seattle. They borrowed money, from time to time, from Vahan Boyd and J. V. Boyd, executing and delivering their notes therefor, and at the same time delivering into the possession of the Boyds, as collateral or pledges, valuable articles of jewelry and other personal property of much greater value than the money borrowed, which articles the pawnbrokers had received in the usual course of their business. The identity of the articles pledged to the Boyds changed from time to time as the owners redeemed them from the pawnbrokers; at which times other articles of equal value were substituted so as to continue the total value of the pledges in possession of the Boyds. Upon the failure of the makers of the notes to pay, the Boyds brought this action against the Huttons to recover on twenty several promissory notes aggregating $11,500, and to foreclose their pledgees' lien on the articles in their possession. The answer of the defendants was that the notes declared on in excess of $8,000 had been paid and covered by the notes aggregating $8,000, which latter were to that extent renewals of the excess mentioned. The answer admitted the notes amounting to $8,000, and set up as a defense thereto that all of them were made and delivered with the corrupt and unlawful agreement that the plaintiffs should receive interest on the several sums in excess of twelve per cent per annum, to wit, eighteen and thirty per cent per annum, and that at such rates defendants had paid interest in the sum of $3,545.50.

Julia B. Hoitt, J. P. Smith, Matilda Ryan and H. R. Fischnaller separately intervened in the action, as cred-

itors of Hutton and Hutton. Julia B. Hoitt alleged that she held four promissory notes in the respective sums of $2,500, $7,400 on the principal of which $1,000 had been paid, $1,000 and $10,374.50, made and delivered by the Huttons on account of money advanced to and used by them in their business as pawnbrokers. J. P. Smith alleged that he held twelve promissory notes aggregating $2,120, made and delivered by the Huttons on account of money advanced to and used by them in their business. Matilda Ryan alleged that she held eleven promissory notes aggregating $3,600, made and delivered by the Huttons on account of money advanced to and used by them in their business. H. R. Fischnaller alleged that he held a promissory note of $500, made and delivered by the Huttons on account of money advanced to and used by them in their business. Each of the interveners further alleged with reference to each note declared on that, at the time it was given and as a part of the same transaction, there was executed and delivered by the makers of the note a written agreement whereby the makers agreed, among other things, that the money borrowed would be used by the pawnbrokers in their business, and that they would keep on hand in trust cash or notes and securities taken therefor at all times equal to the amount of all outstanding notes signed by them. Each complaint in intervention was traversed by the other interveners and by the original plaintiffs and defendants.

The answer of the Huttons to the complaint of Julia B. Hoitt further alleged that all of the notes she sued on were made and delivered with the agreement between the parties that interest should be paid in excess of twelve per cent per annum and that the same were usurious. This was denied by her reply. Because of allegations on the part of some of the inter-

veners that Ralph H. Hoitt was a partner with the Huttons, he appeared in the action and denied those allegations. During the course of the case a receiver was appointed. Some question of the propriety of the appointment is raised on the appeal, but we are satisfied it was entirely proper because it was clear the firm of pawnbrokers was not meeting its debts in the ordinary course, that it was insolvent and that considerable of its property was in the possession of the Boyds, who were seeking to foreclose a lien upon it because of money contracts which the defendants alleged to be tainted with usury.

Upon appropriate findings entered at the trial, it was determined that the action of the plaintiffs be dismissed because of the usurious character of the notes sued on, the amount of the principal of which was exceeded by penalties imposed by the statute. For the same reason, the action of the intervener Julia B. Hoitt as to all the notes held by her, other than the $7,400 note, was dismissed. She was given judgment on the $7,400 note in the sum of $6,400 and interest, she having admitted the receipt of $1,000 on the principal. Judgment was given against the Huttons for $3,600 and interest in favor of Matilda Ryan; for $2,120 and interest in favor of J. P. Smith; and for $500 and interest in favor of H. R. Fischnaller. Ralph H. Hoitt was dismissed out of the case, and it was further ordered that the chattels theretofore held as pledges by the plaintiffs were free from any claim on their part and were to be taken and held by the receiver.

The plaintiffs have appealed from the whole of the judgment. The Huttons and the receiver have appealed from that part of the judgment in favor of Julia B. Hoitt, and she has appealed from that portion of the judgment denying recovery on the three notes other than the one for $7,400.

We consider first the appeal of the plaintiffs. The contention is that the evidence does not show the contracts were usurious. While the notes on their faces provide for interest at twelve per cent per annum, that is in no sense controlling; and the evidence, though somewhat conflicting, overwhelmingly shows, both by direct testimony and the most convincing circumstances, that the agreement at the inception of each and all of the notes was that the Huttons were to pay, and that they did pay, interest at the rate of eighteen per cent per annum, and in some instances a greater sum. It is argued that the plaintiffs were pawnbrokers themselves and could legally charge and receive three per cent per month interest as provided in § 2486, Rem. Comp. Stat. No such claim was made in their pleadings, and was not suggested during the trial that we can find. One of the plaintiffs was out of the state and the other, who made the loans for both of them, was engaged in conducting a drug store, and, upon receiving the pledges, he deposited them in safety deposit boxes. There is nothing to show that any records were kept or reports made to the police by either of them as required by the statutes governing the business of pawnbrokers. We are satisfied they were only common law pledgees of the articles. It was that kind of lien they sought to foreclose by their complaint.

Further, it is claimed by them that the offset of unpaid interest should have included only that called for by the note down to the date of demand for payment or commencement of the action, and not until the date of judgment. The statute, § 7304, Rem. Comp. Stat., with reference to usurious contracts, provides, "and if interest shall have been paid, judgment shall be for the principal less twice the amount of the interest paid, and less the amount of all accrued and

unpaid interest." In the case of *Holland Co. v. Aitken*, 98 Wash. 107, 167 Pac. 109, we said: "The words *accrued* and *unpaid* clearly refer to the time when the judgment is rendered upon the usurious instrument." One matter may be mentioned that is not discussed in the briefs—it satisfactorily appears from the evidence that all the notes sued on by the plaintiffs over $8,000 were canceled and renewed by the notes aggregating $8,000.

Further, the plaintiffs contend the interveners did not have sufficient interest in the original action to entitle them to participate in the trial Enough has been said, we think, to show they had a very vital interest in it. The result proves it; and besides, since no claim is made that the computation of the offsets is wrong, assuming that the trial court adopted the proper basis, as we have found it did, by doubling the interest already paid and adding thereto the accrued and unpaid interest, the plaintiffs are not entitled to recover anything, and hence cannot claim injury or prejudice by reason of the interventions.

Next we consider the cross-appeals from that portion of the judgment in favor of Julia B. Hoitt in the sum of $6,400 and interest on the $7,400 note. The contentions of the cross-appellant are, (1) that the note was usurious, just as the trial court found the other notes she sued on were; and (2) that, if not tainted with usury, it was the individual obligation of Jeannette Hutton, she being the only signer of it, and not the obligation of the partnership of James E. Hutton and Jeannette Hutton. Concerning the first, it appears that, for some time prior to February 1, 1916, Ralph H. Hoitt and Jeannette Hutton, under the trade-name of Empire Mortgage Loan Company, had conducted the business, not as pawnbrokers, but as a straight

chattel mortgage loan business, for which his mother, through him, had loaned the partnership $7,400. On that date it was decided that the partnership should be dissolved, and it was dissolved upon his retiring from it. It was understood at the same time that Jeannette Hutton and James E. Hutton, under the same trade-name, would thereafter continue in business as pawnbrokers, with the further understanding that the new partnership could procure funds through Ralph H. Hoitt. Among the terms of dissolution of the partnership, it was agreed that the $7,400 theretofore advanced by or through Ralph H. Hoitt should be taken care of, and accordingly a note in that amount, bearing twelve per cent per annum interest, payable to him, was signed and delivered by Jeannette Hutton. This note was immediately assigned and delivered by him to his mother, Julia B. Hoitt. At the same time, and as a part of the dissolution agreement, they signed an instrument providing, "that all amounts collected on loans made previous to February 1, 1916, in excess of the amount of $7,400 and interest as covered by the note of February 1, shall be equally divided between the parties." This was a perfectly valid agreement as to the manner in which they could dissolve their business relations. The note, though made payable to him, was at once assigned and delivered to Julia B. Hoitt, who had actually furnished the money, and there is no testimony to show that it was ever agreed directly or indirectly at any time that more than twelve per cent interest per annum should be paid on the note.

The other contention, that the $7,400 was not a partnership obligation, is not sustained by the record. It was alleged that the note was made by Jeannette Hutton for and on behalf of the new firm consisting of herself and James E. Hutton. He commenced as her part-

ner on that day and continued as such thereafter under the same trade-name, and together they received the assets, rights and good will of the old business for which the note was given. Thereafter, while he was a partner, payments were made on the note, until at the trial there was due on it $6,400, with interest from November 1, 1920.

As to the cross-appeal of Julia B. Hoitt from that part of the judgment allowing no recovery on three of the notes held by her, the evidence is clear in favor of the judgment. The money represented by these three notes was furnished to the Huttons by her through her son, Ralph H. Hoitt, partly at the time and partly after the Huttons commenced their partnership, according to the understanding between the Huttons and Ralph H. Hoitt at the time he withdrew from the partnership that he would supply the new firm with money. That agreement, which, as already stated, was in writing, provided as to these advances as follows:

"That in consideration of the party of the first part furnishing the party of the second part with moneys or capital to engage in the Collateral Loan business, the second party hereto hereby agrees to pay as a bonus, from the proceeds of the sale of unredeemed pledges, an amount equal to Twelve per cent (12%) per annum on the total amount furnished. Then and thereafter the amount remaining from the said sale shall be divided equally between the parties hereto."

The three notes, by their terms, provided for the limit of twelve per cent interest per annum, and now this contract made with Ralph H. Hoitt, who the court properly found acted as the agent of his mother, further provides for a bonus to be paid from the proceeds of unredeemed pledges of twelve per cent per annum on the total amount furnished, and still further that all such proceeds above the bonus should be equally

divided with the party furnishing the money. The trial court properly found upon the evidence that thereafter Hutton and Hutton did deliver to Ralph H. Hoitt valuable articles or unredeemed pledges. The statute, § 7304, Rem. Comp. Stat., says that where the same person acts as agent of the borrower and lender, he shall be deemed the agent of the lender for the purposes of the chapter. The statute prohibits interest in excess of twelve per cent per annum that "shall be contracted for or received or reserved," and further provides, "the acts and dealings of an agent in loaning money shall bind the principal, and in all cases where there is illegal interest contracted for by the transaction of any agent, the principal shall be held thereby to the same extent as though he had acted in person," —a specific assertion of policy to prevent a circumvention of the law against usury. The computation of offsets as provided by the statutes shows they exceed the principal of the three notes.

The judgments in favor of interveners Smith, Ryan and Fischnaller seem to be unquestioned, and, together with the dismissal of the case as to Ralph H. Hoitt, were proper, upon the record.

Judgment affirmed.

PARKER, C. J., TOLMAN, FULLERTON, and BRIDGES, JJ., concur.