[No. 23175.   Department One.   March 1, 1932.]

J. A. SIMPSON, *Respondent*, v. THE C. P. COX CORPORA-
TION *et al., Appellants.*[1]

*Clarence L. Gere,* for appellants.

*Charles E. Congleton,* for respondent.

HERMAN, J.—Plaintiff sued defendants on a promis-
sory note for $3,500, due ninety days from date, with
interest at seven per cent per annum.   Defendants'
answer to the action on the note was the defense of
usury.   Plaintiff replied, alleging that defendants
solicited plaintiff to join in the venture of purchase
and sale of scrap steel, on some of which defendants

[1]Reported in 8 P. (2d) 424.

had secured an option, and for which defendants had secured buyers in the Orient. The reply also contained the allegations that an agreement had been entered into between plaintiff and defendants, by the terms of which plaintiff should advance $3,000 in cash for the joint enterprise and defendants would guarantee to the plaintiff the return of the $3,000, together with a profit of $500 on the purchase and sale of the scrap steel, and it was agreed that the return of the $3,000, together with the $500 profit, should be evidenced by a promissory note for ninety days, bearing interest at seven per cent per annum.

The cause came on for trial in the superior court in 1930, and resulted in a judgment for plaintiff, predicated upon the theory that defendants were indebted to plaintiff in the sum of $3,000 and interest, less the amounts paid by defendants on principal and interest prior to the trial. From that judgment, defendants appeal.

The principal question necessary to be determined by us is whether the transaction was usurious. The testimony showed that respondent had worked for the Whiton Hardware Company for twenty-five years, first as salesman and later as assistant sales manager, and that, shortly prior to the transaction out of which this litigation arose, his employer had ceased business. Respondent testified that he was solicited by appellant Claude P. Cox to advance $3,000, and was guaranteed a profit of at least $500, and that, as the result of such solicitation, he entered upon a joint venture with appellants.

Pursuant to that agreement, two instruments were executed. One of these was the promissory note upon which this suit was predicated, dated May 8, 1926, in the sum of $3,500, payable ninety days from date

thereof, with interest at seven per cent per annum until paid, and providing for a reasonable attorney's fee in case of suit. The other document was in words and figures as follows:

"THE C. P. Cox CORPORATION
"Seattle

"Mr. J. A. Simpson,                    May 6th, 1926.
"Seattle, Washington.
"Dear Sir:

"Confirming conversation of May 4th relative to financing shipments scrap steel to the Orient, we hereby agree on the advance of three thousand dollars ($3,000) to guarantee a profit of five hundred dollars ($500) for the advance of the above amount for ninety (90) days, a note to be issued for thirty-five hundred dollars ($3,500) bearing interest at seven per cent (7%) payable at maturity.

"It is further understood and agreed that we will pay a profit on the following deals now pending.

"No. 1.—Railroad box cars now in storage at East Waterway Dock.

"No. 2.—Russian Box car Material now located Vancouver, B. C.

"No. 3.—Scrap steel from the 'Empress of Japan' now located Vancouver, B. C.

"We have option to buy and sell No. 1 and No. 3, and No. 2 pending and have bona fide buyers for No. 1—2—3 and it is just a matter of time when deals will be consummated.         Very truly yours,
                                "CLAUDE P. Cox
"ACCEPTED:                          Pres. & Gen. Mgr.
    "J. A. SIMPSON          CLAUDE P. COX."

Appellant Claude P. Cox testified that the $500 representing the difference between the face value of the note and the amount received, plus the interest provided in the note and any profits made on certain other deals pending, were pledged as interest for the use of the $3,000 for the period of ninety days, and that there was no suggestion of a joint venture between respondent and appellants.

■ The rule with reference to the construction of contracts claimed to be usurious is well set forth in 39 Cyc. 917, as follows:

"Since usury laws are quasi-penal, the courts will not hold a contract to be in violation of the usury laws unless upon a fair and reasonable construction of all of its terms, in view of the dealings of the parties, it is manifest that the intent of the parties was to engage in such a transaction as is forbidden by those laws. If two reasonable constructions are possible, by one of which the contract will be legal and valid, while by the other it will be usurious and invalid, the court will always adopt the former. In short the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained on any other hypothesis."

In *Orvis v. Curtiss,* 157 N. Y. 657, 52 N. E. 690, 68 Am. St. 810, the court said:

"An agreement between two parties to enter into a joint venture in the purchase or sale of stocks or other property is a very common transaction. The fact that one of them may have advanced the capital, and the other has agreed that, in consideration of such advance, he should participate more largely in the profits, does not convert such an agreement into a loan of money, or conflict with the statute against usury. The contract is still one of partnership."

We conclude the trial court was correct in its holding that there was no usury in connection with the loan of $3,000. Respondent not having cross-appealed, the question of whether the trial court erred in holding there was no consideration for the additional $500 set up in the note is not before us.

■ Appellant further contends that the court erred in directing the payment into court of the sum of $762.68. This was done by a judgment entered October 6, 1928, after appellant had filed an answer July

19, 1928, tendering that amount. The judgment contained the following provision:

"It is further ordered that execution may issue on said judgment in the regular course, without prejudice to any further judgment that might be entered herein on the cause of action set forth in plaintiff's complaint."

The authority for entering that judgment is found in Rem. Comp. Stat., § 744, which reads as follows:

"When the answer of the defendant admits part of the plaintiff's claim to be just, the court, on motion, may order the defendant to satisfy that part of the claim, and may enforce the order by execution or attachment."

Appellants further claim that, after execution, they paid this judgment of October 6, 1928, and that, because respondent received the $762.68 from the clerk of the court, his remedy is exhausted. We are compelled to hold against that contention. The purpose of the statute is to allow the court to dispose of that part of an action over which there is no dispute. Such statutes are not unusual.

"But by statute, in many jurisdictions, judgment may be entered before trial, for the part admitted and a trial had for the part disputed. Under this class of statutes two judgments may be rendered in the same case, both for plaintiff, or one for plaintiff and one for defendant, according to the result of the trial of the controverted portion of plaintiff's claim." 34 C. J. 144.

Judgment affirmed.

TOLMAN, C. J., PARKER, BEELER, and MITCHELL, JJ., concur.